CHARLES W. WORS, JR., APPELLANT, v. G. L. TARLTON AND MIDWEST INDUSTRIAL DEVELOPMENT COMPANY, A CORPORATION, RESPONDENTS.—95 S. W. (2d) 1199.

St. Louis Court of Appeals. Opinion filed July 7, 1936.

Motion for rehearing overruled July 20, 1936.

Writ of Certiorari quashed November 15, 1938.

*Foristel, Mudd, Blair & Habenicht* for appellant.

*Anderson, Gilbert & Wolfort* for respondent, Midwest Industrial Development Company.

*Green, Henry & Remmers* and *John L. Harlan* for respondent G. L. Tarlton.

BECKER, J.—This is an appeal by the plaintiff from a judgment rendered against him upon an involuntary nonsuit. The action is one at common law for damages for personal injuries, with damages prayed against the defendants in the sum of $7500.

Plaintiff, an employee of the Illinois Terminal Company, a common carrier by railroad, was injured upon certain premises located in the vicinity of Twelfth and Morgan Streets in the City of St.

Louis, where excavation work was in progress preparatory to the laying of the foundation for a large building to be erected at that point. Defendant Midwest Industrial Development Company was the owner of the premises upon which the excavation and foundation work was being done by defendant G. L. Tarlton, a general contractor, who had theretofore entered into a written contract with the former for the work. The Illinois Terminal Company was likewise under contract with the Midwest Industrial Development Company, its contract calling for the installation of temporary railroad tracks upon the premises, with such temporary tracks leading to and connecting with its main tracks which extend from St. Louis, Missouri, to the State of Illinois by way of the McKinley Bridge across the Mississippi River; for the placing of railroad cars upon such temporary tracks in which would be loaded the materials excavated by Tarlton upon the premises pursuant to his contract with the Midwest Industrial Development Company; and for the subsequent removal and disposal of such material by the Illinois Terminal Company in and upon its right of way and yards in Venice, Illinois.

Under the terms of the contract entered into between the Illinois Terminal Company and the Midwest Industrial Development Company, the Illinois Terminal Company would credit the Midwest Industrial Development Company with an agreed price per cubic yard for earth excavated on the latter's premises and dumped upon the former's right of way at Venice, Illinois, but would charge the Midwest Industrial Development Company for the cost of installing the temporary tracks upon its premises, and for the cost of the cars, crew, and power used in moving the earth, including the cost of the work being done by plaintiff at the time his injuries were received. But though it is true that plaintiff's wages were thus indirectly paid by the Midwest Industrial Development Company, and regardless of what may have been his statutory relationship to any of the other parties to the case, he at no time ceased to be an employee of the Illinois Terminal Company, and his immediate foreman was concededly an employee of that company as well.

There was, of course, no contract or agreement of any kind or character between defendant Tarlton and the Illinois Terminal Company with reference to the matter of the removal of the earth excavated by Tarlton, such feature of the case being covered purely by the contract existing between the Midwest Industrial Development Company and the Illinois Terminal Company, as we have already pointed out.

Plaintiff was employed and engaged as a ''car trimmer,'' by which is meant that it was his duty to stand inside a car while it was being loaded and to level off the dirt as it was dumped into the car, such ''trimming,'' as it was termed, being designed to serve the dual purpose of enabling the cars to be filled to capacity and of pre-

venting the dirt from falling into the street as the cars were hauled out of the premises of the Midwest Industrial Development Company upon tracks laid upon the surface of the city streets.

On the morning of March 31, 1931, while plaintiff was working inside a car which was being loaded with dirt dumped into the car by a steam shovel being operated by one Farmer, an employee of defendant Tarlton, certain of the dirt so dumped into the car rolled over against plaintiff, pinning him against the end of the car, and inflicting the injuries upon him for which he has sued in this action.

In his petition plaintiff set up the fact that defendant Tarlton was doing his work of excavating for and on behalf and under the direction of defendant Midwest Industrial Development Company; that the work of loading the dirt into railroad cars was done independently of any supervision or direction, or right of supervision or direction, on the part of the Illinois Terminal Company; that the work was done under the sole and exclusive direction, supervision, and control of the defendants; that the employees engaged at the work were not subject to any control or supervision of the Illinois Terminal Company; and that the work being carried on by the defendants was not being done on or about the premises of the Illinois Terminal Company, and was not an operation of the usual business of such company.

He then alleged his *status* as an employee of the Illinois Terminal Company, a common carrier by railroad engaged in commerce between the States of Missouri and Illinois; that the cars, when loaded with dirt taken from premises, were intended to be and were transported by the Illinois Terminal Company from Missouri to Illinois; and that while plaintiff was employed upon one of such cars which was engaged at the time in interstate commerce by the Illinois Terminal Company, the defendants, acting by and through their agents and servants, inflicted injuries upon plaintiff as the direct result of their carelessness and negligence in certain respects specifically enumerated in the petition, but of no consequence on this appeal.

For its answer defendant Midwest Industrial Development Company set up that at the time plaintiff's injuries were received he was employed by the Illinois Terminal Company, which was then and there employed by the Midwest Industrial Development Company to do and was doing work under contract on and about the premises of the Midwest Industrial Development Company; that said work was in the operation of the usual business which said Midwest Industrial Development Company carried on upon the premises; that plaintiff, the Illinois Terminal Company, and the Midwest Industrial Development Company were all operating under the Missouri Workmen's Compensation Act; that plaintiff had theretofore made claim under the act against his immediate employer, the Illinois Terminal Company, and had received an award from the Commission, and had

received and accepted compensation under the act from his immediate employer, the Illinois Terminal Company; that the liability, if any, of the Midwest Industrial Development Company to plaintiff was under the act; and that its liability to plaintiff, if any, had been fully discharged by the payments made to plaintiff by said Illinois Terminal Company of all sums due plaintiff under his claim before the commission.

Defendant Midwest Industrial Development Company further alleged that the workmen's compensation commission had sole and exclusive jurisdiction to hear and determine any claim of plaintiff against the Midwest Industrial Development Company, and that the circuit court was wholly without jurisdiction over any claim of plaintiff against the Midwest Industrial Development Company on account of the injuries alleged in his petition; that in and by its award the commission had theretofore determined, as it was authorized to do, that plaintiff's claim was one within its jurisdiction and that he was entitled to an award under the provisions of the act; that having so determined, the finding of the commission was conclusive and binding on plaintiff and all other parties, and impregnable to collateral attack in this or any other proceeding; and that by so claiming and accepting such payments from said Illinois Terminal Company plaintiff was estopped to assert that the facts existing at the time his injuries were received did not bring his case within the jurisdiction of the workmen's compensation act, and that the commission did not have jurisdiction, and that the payments so received by him were not in fact due him under the act.

For his answer defendant Tarlton admitted that in carrying on his work of excavating on the premises he was acting as the agent and employee of the Midwest Industrial Development Company and was doing said work for and on behalf and under the direction of the Midwest Industrial Development Company pursuant to a written contract, by the terms of which the said Midwest Industrial Development Company reserved the full and complete right of direction and supervision of the work; and by way of defense he alleged that his employees were at all times subject to the control and supervision of the Midwest Industrial Development Company, and were not subject to any control or supervision of the Illinois Terminal Company.

Plaintiff's reply was in the conventional form. At the outset of the the trial of the case the question was raised as to whether plaintiff had a cause of action to assert at common law, the defendants contending that the case was one falling within the exclusive purview of the Missouri Workmen's Compensation Act (Secs. 3299-3376, Rev. Stat. of Mo. 1929, Mo. Stat. Ann., secs. 3299-3376, pp. 8229-8294). To meet this issue, but for the purposes of this particular trial only, the parties thereupon entered into a agreed statement of the facts having to do with the relationship existing between the several parties

to the action and the manner in which the plaintiff's injuries has been received, it being specifically stipulated and agreed therein that absent the question of the application of the compensation act the plaintiff would make out a *prima facie* case of negligence as against both of the defendants.

Upon the facts so stipulated, and for reasons which will presently appear, the court ruled that the claim of plaintiff was one falling within the exclusive jurisdiction of the Missouri Workmen's Compensation Commission; and assuming that it necessarily followed from such conclusion that neither of the two defendants to the action could be subject to any liability to plaintiff at common law, the court gave and read to the jury a peremptory instruction in the nature of a demurrer to the evidence at the request of each of the defendants. Plaintiff thereupon took an involuntary nonsuit; his motion to set the same aside was duly filed and overruled; and from the judgment entered dismissing his cause of action at his costs plaintiff has perfected his appeal to this court by the proper steps.

With reference to the question of the application of the compensation act to the case it was agreed that the Illinois Terminal Company was a major employer and self-insurer under the act; that both Midwest Industrial Development Company and Tarlton were major employers and had insured their entire liability under the act with insurance carriers authorized to insure such liability in this state; and that the work which Midwest Industrial Development Company was having done under contract on its premises was an operation of the usual business which it there carried on.

It was also agreed that on April 16, 1931, approximately two weeks after his injuries were received, plaintiff received his first payment of compensation from the Illinois Terminal Company, as was evidenced by the first receipt and temporary agreement filed with the commission, the same reciting that the Illinois Terminal Company had agreed to pay compensation to plaintiff at a stated rate per week, commencing as of April 3, 1931, and continuing thereafter until such time as the company should notify the commission in writing of the suspension of further payments.

On August 28, 1931, while receiving compensation from the Illinois Terminal Company as indicated, plaintiff filed an action at common law against Tarlton alone, claiming damages from Tarlton upon the theory that he was a "third person" within the contemplation of the act (sec. 3309, Rev. Stat. of Mo. 1929; Mo. Stat. Ann., sec. 3309, p. 8244), and as such liable to plaintiff at common law for the injuries occasioned plaintiff through the negligence of Tarlton's employee, notwithstanding plaintiff's right to claim and accept compensation from his immediate employer, the Illinois Terminal Company.

Thereafter, on September 25, 1931, plaintiff filed a formal claim for compensation with the commission, to which the Illinois Terminal

Company filed its answer, admitting its *status* as employer and self-insurer, and joining issue solely upon the question of the extent and permanency of plaintiff's injuries. It is an agreed fact that at no time did plaintiff make a claim for compensation against the Midwest Industrial Development Company, nor was such company at any time made a part to the proceedings had before the commission on plaintiff's claim against the Illinois Terminal Company.

On November 13, 1931, a temporary or partial award was made by the commission; and thereafter, on December 5, 1933, after the requisite number of payments had been made, the claim was called up for a final hearing before the commission, at which time a compromise agreement between plaintiff and the Illinois Terminal Company was filed with and approved by the commission, pursuant to which plaintiff was allowed the sum of $1700 as compensation, and an additional allowance of $576.62 for medical aid. On the same day there was filed with the commission plaintiff's final receipt for compensation, reciting the payments of the Illinois Terminal Company as indicated, and releasing and discharging such company from any and all further liability to plaintiff under the act.

Meanwhile, on February 11, 1933, plaintiff had filed an amended petition in his action at common law, joining the Midwest Industrial Development Company as a party defendant along with Tarlton, the original defendant to the action, and seeking to hold them both as "third persons" within the meaning of the act, and as such excluded from the benefit, if any, of its provisions.

Plaintiff is now contending that the court was in error in holding, as it did, that his cause of action fell within the exclusive jurisdiction of the workmen's compensation commission and that no liability to plaintiff could be entailed against defendants or either of them at common law. This upon the theory that aside from all other considerations, the compensation act could in no event apply to the case so as to bar his right to proceed against defendants at common law, since plaintiff was concededly an employee of a common carrier by railroad, and both he and the railroad were engaged in interstate commerce at the time his injuries were received. In other words, notwithstanding the fact that plaintiff accepted compensation from his employer, the Illinois Terminal Company, and personally invoked the jurisdiction of the commission by making claim to it for compensation from his employer, he now is insisting that the compensation act is wholly excluded from any application to the cause of action set up in his petition by reason of section 3310, Revised Statutes of Missouri 1929 (Mo. Stat. Ann., sec. 3310, p. 8245), which provides, in effect, that the act shall not apply to cases exclusively covered by any federal law. In fact, in his brief he specifically makes the point that it is the Federal Employer's Liability Act (45 U. S. C. A., sec. 51) which applies to the case, and serves to exclude the application of all

state legislation, including the compensation act, to his cause of action.

Defendant Midwest Industrial Development Company, which has assumed the principal burden for the respondents on this appeal, suggests that the question of interstate commerce is not properly before the court, the same having been heretofore determined *sub silentio* by the commission against plaintiff's present contention, with no appeal taken from its decision and award; and that in any event, even if the question were now open to inquiry, plaintiff, at the time his injuries were received, was not in fact engaged in interstate commerce so as to have rendered the Missouri Compensation Act inapplicable upon the theory that the case was one exclusively covered by federal law.

This brings us then to the questions, first, of the effect to be ascribed to the award of the Missouri Workmen's Compensation Commission in so far as it was an adjudication that the claim of plaintiff was one falling within the purview of the act; and second, whether defendant Midwest Industrial Development Company, which has pleaded the bar of such purported final adjudication, is in a position to take advantage of such defense, not having been a party of record to the proceedings before the commission.

It has been held that an award made by the commission while acting within the scope of its authority determines the respective rights and liabilities of the parties as effectually as does a judgment secured by regular legal procedure, and is as binding and conclusive as a judgment until it is regularly set aside or its validity brought into question in a proper manner. [State ex rel. v. Missouri Workmen's Compensation Commission, 320 Mo. 893, 900, 8 S. W. (2d) 897, 900; 71 C. J. 924, 1182, 1195, 1200.]

In this instance the record of the cause before the commission shows only that the claim was one by plaintiff, the employee, against the Illinois Terminal Company, his employer, for compensation for injuries received while "working on a flat car leveling off dirt;" and in its final award the commission found that plaintiff was entitled to recover for his accident "as provided in the Missouri Workmen's Compensation Law." By virtue of such award the commission must be held to have resolved the question of its jurisdiction in its own favor (Morrison v. Term. R. R. Assn. [Mo. App.], 57 S. W. [2d] 775, 776), and the face of the award, instead of disclosing a lack of jurisdiction so as to render the same void, purports instead to show proper jurisdiction in the commission in view of the recital that the award was rendered "as provided in the Missouri Workmen's Compensation Law," thus indicating that the commission must necessarily have found that the case was not one exclusively covered by any federal law, else it could and would not have assumed jurisdiction over it. Moreover no appeal was taken from the award, so that whether it was actually right or wrong upon the question of fact before

the commission, it in any event became final and conclusive as to the matters adjudicated thereby, and is as impregnable to the present collateral attack made upon it as though it had been rendered by a court rather than by a mere statutory board of arbitrators.

So it is therefore no part of our province to decide on this appeal whether, upon the agreed facts relating to the manner in which plaintiff's injuries were received, his case was actually one beyond the jurisdiction of the commission to determine. Of course we are not unaware that if both plaintiff and his employer, the Illinois Terminal Company, were engaged in interstate commerce at the time of the accident, then there was properly no jurisdiction in the commission (Gieseking v. Litchfield & M. Ry. Co. (Mo. Sup.), 94 S. W. (2d) 375), and this notwithstanding the fact that plaintiff's injuries were received without the fault of his employer so that he could have had no remedy under the Federal Employer's Liability Act. [New York Central R. Co. v. Winfield, 244 U. S. 147, 37 Sup. Ct. 546, 61 L. Ed. 1045.] The Midwest Industrial Development Company argues strenuously that plaintiff was not in fact engaged in interstate commerce when injured, but this is now all beside the point. The commission, which had the undoubted power to make a finding upon the fact of its jurisdiction, may or may not have erred in that finding, but if it did err, there was a way for that error to be corrected by direct attack upon the award. We repeat that the fact of the commission's jurisdiction does purport to appear upon the face of its award; and such being the situation, the court may not in this collateral proceeding treat the award as void and disregard the same in so far as it is conclusive of any matter at issue in this proceeding.

But granting all this to be true, may the Midwest Industrial Development Company plead and rely upon the fact of such final adjudication of plaintiff's claim by the commission when it was not a party to the proceedings before the commission, and has itself paid no compensation to plaintiff? Though the point is not without its difficulties, we nevertheless are of the opinion that it may avail itself of such defense in view of the relationship existing between the several parties to the case.

It is agreed that in so far as the compensation act is to be held applicable to the case, the question of the relationship of the parties and of their respective rights and liabilities is to be governed by section 3308, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 3308, p. 8242), and particularly by subsections (a) and (d) thereof, which read as follows:

"(a) Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employes,

when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.''

''(d) In all cases mentioned in the preceding subsections, the immediate contractor or subcontractor shall be liable as an employer of the employes of his subcontractors. All persons so liable may be made parties to the proceedings on the application of any party. The liability of the immediate employer shall be primary, and that of the others secondary in their order, and any compensation paid by those secondarily liable may be recovered from those primarily liable, with attorney's fees and expenses of the suit. Such recovery may be had on motion in the original proceedings. No such employer shall be liable as in this section provided, if the employe was insured by his immediate or any intermediate employer.''

The provisions of subsection (a) are plain, and when applied to the stipulated facts of the case at bar it simply means that when the Midwest Industrial Development Company undertook to have work done upon its premises under contract with Tarlton and the Illinois Terminal Company, the work so contracted for being an operation of the usual business which it carried on upon such premises, it thereupon became the statutory employer of the employees of both Tarlton and the Illinois Terminal Company, and as such subject to liability to them for compensation when injured on or about its premises while doing the work which was in the usual course of its business. In other words, the Midwest Industrial Development Company, under the agreed facts of the case, became the statutory employer of plaintiff while he was employed upon its premises, and became liable to him for compensation for his injuries received on the occasion in question, unless that result was avoided by reason of certain of the provisions of subsection (d).

In the trial court the controversy was unfortunately made to turn primarily upon the question of whether plaintiff was ''insured'' by his immediate employer, the Illinois Terminal Company, within the meaning of the act, the latter being concededly a self-insurer, as has been already pointed out. Plaintiff's contention was that if his immediate employer, the Illinois Terminal Company, was to be regarded as having had its liability under the act insured by virtue of its status as a self-insurer, then under the concluding sentence of subsection (d), the Midwest Industrial Development Company specifically exempted from any and all liability to plaintiff under the act, it could not claim any benefits or immunities thereunder, but was to be regarded as a ''third person'' so far as the act is concerned, and as such liable to plaintiff at common law for its negligence, if any, proximately resulting in the injuries he received.

Defendant Midwest Industrial Development Company's insistence was, on the other hand, that the securing of the commission's approval of an employer's application to be permitted to carry his own lia-

bility without insurance as provided in the act is not the equivalent of, nor does it constitute, the carrying of insurance within the meaning of the other portions of the act; that plaintiff within the contemplation of subsection (d), was therefore not insured by his immediate employer, the Illinois Terminal Company, a conceded self-insurer; and that the question of the liability of the Midwest Industrial Development Company to plaintiff was consequently left to be determined solely under the act, even though the fact was that such liability had theretofore been fully satisfied and discharged by the payment to plaintiff by his immediate employer, the Illinois Terminal Company, of the full amount of compensation found to be due him by the commission.

Incidentally, it was upon such latter theory of the case that the lower court concluded that plaintiff should be nonsuited, though for our part, for reasons which we shall presently disclose, we think it is of no particular consequence upon the ultimate result in the case whether plaintiff is to be regarded as having been insured by his immediate employer, the Illinois Terminal Company, or not.

The prime purpose of section 3308 is to prevent the owner of the premises upon which he is having work done of the usual character of work which he there carries on from circumventing the act and escaping all liability either under the act or at common law by the fiction of contracting independently for the work with persons without financial responsibility. [De Lonjay v. Hartford Accident & Indemnity Co., 225 Mo. App. 35, 35 S. W. (2d) 199; Cummings v. Union Quarry & Construction Co. (Mo. App.), 87 S. W. (2d) 1039, 1041.] This section therefore makes the owner of such premises the statutory employer of the employees of those with whom he contracts; and in order to encourage him to contract with responsible persons it expressly relieves him of all personal liability for compensation to an employee of such a contractor where the employee is insured by his immediate or any intermediate employer.

But though in a particular instance the immediate employer does carry insurance for the benefit of his employees so as to relieve the owner or remote contractor of all liability to such employees for compensation for injuries received by them upon his premises, it does not follow that the owner or remote contractor is thereby put outside the pale of the act, with his status thereby changed from statutory employer to "third person." To so hold would be to penalize the owner or remote contractor for carrying out the very salutary and beneficial purpose for which the section was written into the act as we have already pointed out. To the contrary, he remains all the while within the act, and continues to occupy the status of statutory employer of the employees of his subcontractor, though excused and relieved from liability for compensation to such injured employees because of the fact that they are insured by their immediate employer.

The important thing to bear in mind is that it is only subsection (a) of section 3308 which purports to fix the liability of the owner or remote contractor to the injured employees of his subcontractor, and that the only purpose served by subsection (d) is to fix and determine the liability *inter sese* of the several contracting persons who may themselves be liable to the injured employee. [Pruitt v. Harker, 328 Mo. 1200, 43 S. W. (2d) 769.] The latter subsection provides that in any event the liability of the immediate employer shall be primary, and that of the others secondary in their order; that any compensation paid by one secondarily liable may be recovered by him from the one primarily liable; and, as we have already pointed out, that no such statutory employer shall be liable if the employee was insured by his immediate or any intermediate employer. However, we repeat that such concluding provision does not serve to put the statutory employer outside the act in those instances where the immediate or any intermediate employer of the injured employee carries insurance, but he remains within the purview of the act and within the protection of its provisions, even though under certain circumstances he is relieved of all liability for compensation to the injured employee.

In Langston v. Selden-Breck Constr. Co., 225 Mo. App. 531, 37 S. W. (2d) 474, we have heretofore construed subsection (d) of section 3308 as having the effect of constituting the owner or remote contractor a "third person" to the act in those cases where he is relieved of all liability under it by reason of the fact that the injured employee was insured by his immediate or some intermediate employer. In such respect, and in so far as that decision holds contrary to the views expressed herein and in Pruitt v. Harker, *supra*, it should obviously be no longer followed.

With the question of the legal status and relationship of the several parties thus determined, the right of defendant Midwest Industrial Development Company to rely upon the final adjudication of plaintiff's claim by the commission is the more readily apparent.

It is a well established principle of law that a judgment is conclusive and binding, not only upon the parties to the action or proceeding in which it was rendered, but also upon persons who are in privity with them in respect to the subject matter of the litigation. [Summet v. City Realty & Brokerage Co., 208 Mo. 501, 106 S. W. 614; State ex rel. v. Holtkamp, 330 Mo. 608, 51 S. W. (2d) 13; Kelly v. City of Cape Girardeau (Mo. App.), 89 S. W. (2d) 693; 34 C. J. 1009.]

Now we do not pretend to say that the Midwest Industrial Development Company was in privity with the Illinois Terminal Company in the true legal sense of the term, for it clearly was not. "Privies" in the strict sense are those persons who have mutual or successive relationship to the same right of property or subject matter as is possessed by the parties to the litigation themselves. [State ex rel. v.

City of St. Louis, 145 Mo. 551, 46 S. W. 981; State ex rel. v. Holt-kamp, *supra*; 34 C. J. 1010.] Here the Midwest Industrial Development Company has succeeded to no right of the Illinois Terminal Company, but was always the statutory employer of the latter's employees, and as such secondarily liable to them for compensation. It is obvious, however, that under such circumstances the Midwest Industrial Development Company, even though not privy to the Illinois Terminal Company, was nevertheless so connected in interest and liability with the Illinois Terminal Company that an adjudication of the latter's primary liability to plaintiff would inure to the benefit of the Midwest Industrial Development Company as well.

In respect to the matter of the conclusiveness of judgments it is a recognized principle that persons so connected in interest and liability, though not falling within the true technical statute of privies, may nevertheless avail themselves of a former judgment in bar of a subsequent action or proceeding upon the same subject matter, in view of the policy of the law to end litigation by preventing a party who has had one trial of a question from again bringing it into controversy. [Brown v. Ry. Co., 222 Mo. App. 518, 281 S. W. 64; Taylor v. Sartorious, 130 Mo. App. 23, 108 S. W. 1089; 34 C. J. 975.]

In this instance plaintiff has had a final award upon his claim for compensation, and he has been paid all the compensation to which he is entitled under that award. Though the Midwest Industrial Development Company was not a party to the proceedings before the commission, it might have been made a party; and when plaintiff asked and received an award of compensation from his immediate employer as the one primarily liable to him, he exhausted his rights before the commission, and the liability to him of Midwest Industrial Development Company was as fully determined and extinguished as though it had been made a party to the proceeding and the award had specifically gone against it. It therefore has the right to rely upon that award as a bar to the present action brought against it upon the same subject matter, and plaintiff's insistence to the contrary stands for disapproval.

This brings us then to the question of the liability to plaintiff of defendant Tarlton at common law. It is to be borne in mind, of course, that plaintiff was injured through the negligence of Farmer, an employee of Tarlton, or at least it is agreed that for the purposes of the present case plaintiff would make out a *prima facie* case of negligence against Tarlton. Now there was no contract of any sort between Tarlton and the Illinois Terminal Company, plaintiff's immediate employer, so that Tarlton was in no sense the statutory employer of plaintiff and liable to him for compensation as was the Midwest Industrial Development Company. The latter, by virtue of its contracts with Tarlton and the Illinois Terminal Company was the statutory employer of the employees of both Tarlton and the Illinois

Terminal Company, and to that extent Farmer and plaintiff were fellow servants, but for all other purposes they were strangers to one another under the act, just as Tarlton himself was likewise a stranger to plaintiff. However, notwithstanding that they were fellow servants in the respect pointed out, Farmer was nevertheless answerable to plaintiff at common law for any negligence on his part proximately resulting in an injury to plaintiff (Sylcox v. Nat'l. Lead Co., 225 Mo. App. 543, 38 S. W. (2d) 497), from which it follows that Tarlton, as Farmer's actual employer, was likewise answerable to plaintiff under the doctrine *respondeat superior*. Plaintiff pleaded such theory of liability on Tarlton's part, and the case against Tarlton having been one for the jury in so far as disclosed by the stipulation of facts made up and filed by the parties, the court was in error in giving the peremptory instruction requested by defendant Tarlton.

It follows, therefore, that the judgment rendered by the circuit court should be affirmed as to defendant Midwest Industrial Development Company, but reversed and remanded for a new trial as to defendant Tarlton. It is so ordered. *Hostetter, P. J.*, and *McCullen, J.*, concur.