**Una Singleton VAUGHAN, Respondent,**

v.

**Donald L. SINGLETON, Appellant.**

**No. KCD 30094.**

Missouri Court of Appeals,
Western District.

June 29, 1979.

William D. Powell, Columbia, for appellant.

David V. G. Brydon, Jefferson City, for respondent.

Before SHANGLER, P. J., and WASSERSTROM and CLARK, JJ.

SHANGLER, Presiding Judge.

The trial court determined that the defendant owed his former wife Five Thousand Dollars under a stipulation for settlement of a third party suit and entered judgment accordingly. The defendant appeals on contentions that he had fully performed the agreement and that the adjudication was based on inadmissible evidence.

The wife brought suit earlier to terminate the marriage and dissolution was adjudged. The property division was taken to this court on appeal. [*Singleton v. Singleton*, 525 S.W.2d 642 (Mo.App.1975)]. Among the property to be determined was the right to Fifty Thousand Dollars realized from the sale of the residence. That money was placed in escrow with attorneys Lewis and Porter, their respective counsel, the disposition to abide final judgment on review.

The wife had earlier brought suit against another female to recover for the alienation of the affections of her husband. That suit pended at the time the suit for dissolution was commenced. On the day of trial of the alienation of affections suit the wife accepted judgment for One Dollar against the female defendant. As another consideration for the acceptance of that judgment, the husband agreed to pay the wife Five Thousand Dollars from the escrow funds held by counsel. That sum was promptly remitted to the wife from the held fund. The terms of agreement were struck discursively by counsel in the courtroom and dictated to the court reporter for transcription:

> MR. PORTER [Counsel for the husband]: We have a stipulation which we will dictate to the Court Reporter. . . .
>
> MR. BRYDON [Counsel for the wife]: [P]art of the Plaintiff's claim she alleged that the Defendant in this case alienated the affections of her then husband, Donald Singleton, and that a part of the consideration for the disposition of this case today Donald Singleton—who is also the client of Mr. Porter has agreed to pay to the Plaintiff in this case the sum of $5,000 in cash. The money is to come from the proceeds of the sale of the Plaintiff's residence and Mr. Singleton's residence in Columbia, Missouri, the closing of which is to take place on or about May 6th of 1974. Approximately $50,000 equity will be realized from the sale of this house. Mr. Raymond C. Lewis, Columbia, represents the Plaintiff in this case in her divorce case, the appeal of which is now pending in the Court of Appeals, Kansas City District. Mr.

Lewis and Mr. Porter have agreed that the $50,000 is to be held by them in escrow until the final disposition of the divorce case. Mr. Singleton will agree that they may immediately release $5,000 thereof to Mrs. Singleton, the Plaintiff herein, and that this settlement that he makes—*the promise that he makes in no way will altar* [sic], *affect or change any of the issues pending in the divorce case and may not be considered in the final disposition of the divorce case.* [Emphasis added.]

At the time of agreement, the circuit court had adjudged dissolution and set aside to each spouse one-half [approximately $25,000] of the proceeds from the sale of the residence. On appeal, the right to that property was reallocated to the wife solely [*Singleton v. Singleton*, supra] so that, in effect, the $5,000 dispensed from the escrow fund to the wife was from her own property. The husband refused to replenish $5,000 to the wife. He contends that the final disposition of the entire property to the wife acquits further obligation because the agreement requires only that the wife be paid from the escrow funds, a performance already fully made. The husband contends also that a letter from counsel for the wife which conveyed her understanding of the agreement was improperly received as evidence and effectively added terms to the agreement without new consideration.

The stipulation of agreement was given to the reporter orally for later transcription. The written embodiment of agreement, from all that appears, followed to counsel within days. At the conclusion of the stipulation proceeding, the wife was prompted by concern that should the trial court's equal allocation of the property be altered on review, the agreement be under-

stood to impose on the husband repayment of the sum paid from the escrow fund. Accordingly, counsel Brydon for her, telephoned counsel Porter to confirm that such was the import of agreement. A day or so later, counsel Brydon confirmed his understanding of the sense of the oral agreement by letter to counsel Porter: [1]

This letter will serve to confirm our settlement of the above case consummated Monday. Mrs. Singleton has expressed some concern about it and I wanted to clear it up so that there would be no misunderstanding.

I understand that Mr. Singleton has agreed to pay $5,000 to Mrs. Singleton in settlement of the above case. As you have advised me that Mr. Singleton has no present funds available, and in order to facilitate it, that $5,000 will come from Mr. Singleton's share of the proceeds of the sale of the home; to be held in escrow by you and Mr. Raymond C. Lewis, Jr., pending outcome of the divorce case now on appeal in the Court of Appeals, Kansas City District.

I understand the trial court decree awarded one-half of those funds to Mr. Singleton and one-half to Mrs. Singleton. In the event that a court of competent jurisdiction ultimately awards 100 percent of those funds to Mrs. Singleton, then she would look to Mr. Singleton to repay that $5,000. I understand that if the trial court decree is ultimately affirmed, that this question will be moot, but I did not want any misunderstanding about it later. If you have a different understanding of the matter, please contact me immediately.

The letter went unanswered.

■ The contentions on appeal present questions of intention to contract. The assent was to an oral contract.[2] The terms of

1. The stipulation agreement was concluded in the presence of the court on April 29, 1974, on the entry of judgment in the alienation of affections action, but not as part of that proceeding. On this appeal, the parties stipulate that Brydon would testify, if called, that "immediately concluding those proceedings," the wife expressed the concern which attorney Brydon

then communicated to counsel Porter as to the intent of the agreement in the event of reversal of judgment. The letter from Brydon to Porter issued on May 1, 1974. It does not appear whether the stipulation had been rendered into a writing by then.

2. *The record does not show when the transcrip-*

an oral contract may be established by parol, by evidence documentary as well as verbal. *Preuitt Construction Co., Inc., v. Doty*, 536 S.W.2d 908, 913[2, 3] (Mo.App. 1976). The parties do not dispute that the recitals to the court reporter are terms of agreement. The question is only whether the stipulation conveyed the entire intention of the transaction. The judgment rendered by the court for the wife, in any event, can stand on the terms of the oral agreement unaided by other evidence, although the very nature of that extemporaneous expression of agreement imports a fragmentary contract, incomplete as to full intention, detail and meaning. [See, Restatement (First) on Contracts § 233.]

■ The stipulation of oral contract recites the agreement of the husband to pay the wife $5,000 in cash as part of the consideration for her disposition of the alienation of affections suit against the woman and authorizes the immediate release of that sum from the escrow fund. The expressions of stipulation, although rendered in the presence of the court at the disposition by judgment of the alienation of affections suit, excepted the subject matter of the agreement from the record of that proceeding and required the performance by the husband to pay $5,000, whatever the final disposition of the divorce case.[3] The conduct of the parties, as well as their words of agreement, show the undertaking by the husband, and the expectation of the wife, of an absolute obligation *from him to pay her* $5,000. *Muse v. E. A. Whitney & Son*, 227 Mo.App. 640, 56 S.W.2d 848, 849[1–3] (1933). The contract was made to be independent of both the alienation of affections suit, which had been concluded by judgment, and the final adjudication of the dissolution action, still on appeal. The intention was that the performance by the husband to pay the wife $5,000 was an unconditional obligation. It contradicts all

practical sense to say that the performance by the husband was only from any interest ultimately adjudged him in the escrow fund. That would mean that the wife agreed to pay herself should the court on review [later the actuality] vest her with the entire interest. Such an hypothesis is absurd both as a matter of ordinary conduct and as a legal proposition, since it would undermine the consideration for the agreement altogether.

■ The sufficiency of the agreement to support the judgment apart, the husband has no position to contend that the letter from counsel Brydon self-served the wife and so was not competent evidence to show the intended performance by the husband because, in fact, that evidence was submitted to the court for judgment.

The decision of the court was invoked on the basis of a stipulation of evidence composed of (1) the oral recitals of agreement by the husband to pay $5,000 to the wife undertaken at the conclusion of the alienation of affections suit [Exhibit A], and (2) the agreement that, if called, counsel Brydon

would testify that immediately concluding those [alienation of affections] proceedings, plaintiff [the wife] expressed a concern that if the Kansas City Court of Appeals reversed the case in question, that *she wanted it quite clearly understood that the money taken from said escrow fund would have to be repaid by defendant. That immediately thereafter, the said David Brydon telephoned Attorney Terence C. Porter, and related that conversation, and that a letter, a copy of which is marked "Exhibit B" attached hereto and made a part hereof for all purposes, was mailed by regular United States mail to the said Terence C. Porter and received by him, and that thereafter, the said Terence C. Porter made no re-*

---

tion of the oral agreement was presented to the parties or whether the written embodiment was accepted as the true transaction.  ·

**3.** "Mr. Singleton [agrees] . . . that his settlement he makes—the promise he makes

[to pay the wife $5,000] in no way will altar, affect or change any of the issues pending in the divorce case and may not be considered in the final disposition of the divorce case."

*sponse to said letter, either orally or in writing.* [Emphasis added.]

The argument that the husband objects to the admission of *the letter* as evidence because "self-serving and irrelevant" was also noted as well as the stipulation that "the Court shall consider said *letter* as evidence only in the event such objections be by the Court overruled." The agreed objection was to the *letter* only [Exhibit B], but not to the testimony by Brydon of the intention of the wife that the husband pay the consideration of the agreement from his own funds, an intention then disclosed to counsel for the husband. That evidence was properly before the court and was competent to support the judgment. The contents of the letter, from what appears from the agreed evidence by Brydon, merely iterate in written form what was fully conveyed by word of mouth to counsel Porter earlier. The letter was merely cumulative and self-served the wife no less than the testimony of Brydon which was rendered competent by the accession of the husband, if for no other reason.

We need not determine whether the Brydon letter [Exhibit B]—conveyed virtually contemporaneously with the oral agreement while the parties remained in harmony and long before the appeals decision gave rise to contention—merely self-served the wife, or, as res gestae or otherwise, bears relevantly on the intention to contract. [See, *Hudson v. Rodgers*, 121 Mo.App. 168, 98 S.W. 778, 780[2] (1906)]. There was substantial competent evidence, Exhibit B notwithstanding, to sustain the judgment of the trial court. *City of Butler v. Kuecker*, 559 S.W.2d 575, 578[4] (Mo.App.1977).

The judgment is affirmed.

All concur.